Harper, J.
We do not perceive any thing in the testimony, to authorize us to reverse the Chancellor’s decree, with respect to his conclusions upon the facts : to wit, that John Ulmer, the executor of Langley, did not assent to the legacy to Mary Cannon, the testator’s daughter, during her life time ; but that, after her death, he permitted the slave Joe; to go into the possession of her husband, who survived her.
On this state of facts, it was argued, that the marital right of the husband attached on the slave, and that the executor was discharged, by delivering him to the husband. The authorities relied on for this purpose, say, in general terms, that if the wife acquires property during the coverture, this is, ipso facto, the property of the husband, the separate existence of the wife being merged in the husband; and that if the husband survive the wife, without reducing it into possession, he takes it jure mariti, and not as administrator. There is no doubt of the law in this respect. If property be conveyed to the wife, during the coverture, or she in any manner acquire the title to it, this'is, in effect, the title of the husband. If it vests in possession, this is sufficient, though there may be no actual manual possession. The wife is riot in contemplation of law a separate person, capable of taking a title. Soj if a bond, or note, be given to the .wife, during coverture, the husband may .sue alone, without joining the wife. In this case, if the .executor .were proved to have assented to the legacy, during the life time of the wife, although jno possession' was taken by the husband, until after her death,-this.might have completed the husband’s title. But this is not shewn, and tve must conclude, therefore, that the title remained in the executor.
It was further.argued, that the executor was authorized to deli, ver over the slave to Henry Cannon; the father, in his own right, and as natural guardian of his son; thé fáther being entitled to one third; and the complainant to two thirds, as the distributees of Mary Cannon. The rule certainly.is, that an executor is not'authorized to pay over-an infant’s legacy to his father ; Toll. Ex. 314, ei seq. although in some instances, where the legacy was trifling, he has *207 been protected in doing so. But neither Henry Cannon, nor the complainant, was the legatee of Christopher Langley. The legacy not having been assented to during the life time of Mary Cannon, no one but her administrator could have been intitled to receive it. If the executor had refused to deliver it until administration taken out, the complainant would have had security for his interest in the legacy. The father being insolvent, the complainant has lost this interest, in consequence of the unauthorized act of the executor. Indeed, no one but the administrator of Mrs. Cannon, could sustain this suit. But the objection is waived on the part of the defendant, who consents, there being no surmise of debts of Mrs. Cannon, to answer directly to the party beneficially interested.
We think, however, there is a plain equity, why the complainant should not recover interest on the value of the slave, up to the time of the sale by Henry Cannon, in 1817. The evidence is uncontradicted, that he himself had principally the services of the slave, up to that period. If the administrator of Mrs. Cannon were suing, for the benefit of creditors, this defence could not be setup; but it would be manifestly unconscientious that the complainant should recover the value of the slave’s services, which he himself has actually received. The decree of the Chancellor, is therefore modified accordingly, so far as respects the question of interest, and in other respects affirmed.
Johnson, J., and O’Neail, J., concurred.

Decree modified.